OSCN Found Document:THE BENJAMIN M. BARRESI SEPARATE PROPERTY TRUST, et al. v. MERIT, et al.

 

 
 THE BENJAMIN M. BARRESI SEPARATE PROPERTY TRUST, et al. v. MERIT, et al.2026 OK CIV APP 11Case Number: 121669Decided: 05/07/2026Mandate Issued: 05/07/2026THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2026 OK CIV APP 11, __ P.3d __

 

THE BENJAMIN M. BARRESI SEPARATE PROPERTY TRUST, an Oklahoma Trust; COSMO ENERGY, LLC, an Oklahoma Limited Liability Company; and NTH, LLC, an Oklahoma Limited Liability Company, Plaintiffs/Appellees,
vs.
MERIT PETROLEUM, LLC, an Oklahoma Limited Liability Company; JOHN W. SWEEDEN, IV, an individual; JCW ENERGY, LLC; SYNTAX, LLC; ALLSQUARE, LLC; ALLSQUARE HOLDINGS, LLC; FOSBURY, LLC; and PUBLICADATAOK, LLC, Defendants/Appellants.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE SHEILA STINSON, TRIAL JUDGE

AFFIRMED

Mark B. Houts, HOUTS LAW, PLLC, Oklahoma City, Oklahoma For Defendants/Appellants

Kyle Goodwin, William M. Lewis, Paul B. Cason, Jason Reese, GOODWIN / LEWIS, PLLC, Oklahoma City, Oklahoma For Plaintiffs/Appellees

JOHN F. FISCHER, JUDGE:

¶1 Merit Petroleum, LLC and its owner John W. Sweeden, IV (collectively "Sweeden" unless otherwise noted) appeal the district court's final order denying their motion to disqualify counsel for NTH, LLC and The Benjamin M. Barresi Separate Property Trust in this litigation. McGee v. Amoco Production Co., 2019 OK 7438 P.3d 355Miami Bus. Servs., LLC v. Davis, 2013 OK 20299 P.3d 477

BACKGROUND

¶2 NTH is an Oklahoma limited liability company. The Operating Agreement of NTH was made effective December 13, 2019. When organized, NTH was owned equally by the Trust, JCW Energy, LLC and Merit. According to the district court's findings of fact, Benjamin Barresi is the sole member of the Trust; Justin Woody is the sole member of the defendant JCW Energy, LLC; and Sweeden is the sole member of Merit.

¶3 Prior to the formation of NTH, Woody and Sweeden had been involved in a partnership with a third partner. It appears that partnership was terminated in July of 2019. Woody and Sweeden used assets and intellectual property from that partnership to form the new business, NTH, with Barresi. Originally, Barresi, Woody and Sweeden were named managers of NTH. However, it appears that Sweeden may have been removed from that office for cause on August 26, 2020, by a vote of Barresi and Woody, although Sweeden contends that his removal was ineffective.

¶4 At the same time NTH was organized, these parties signed a Memorandum of Understanding effective December 13, 2019, whereby Sweeden was to develop software for use in the oil and gas industry and transfer certain assets to NTH. Sweeden represented that development of the software was almost complete. The Barresi Trust agreed to fund completion of the software project in the amount of $2,500,000, of which $2,350,000 was to be contributed "in a manner to be determined by the unanimous vote of the managers." Except for NTH's "monthly cash burn," any increase or decrease in the Trust's periodic contributions to NTH would "be determined by [the Trust] at [its] sole discretion." The software was to be used by Cosmo Energy, LLC, and marketed to other oil and gas industry participants. Cosmo is involved in the oil and gas business and is owned or controlled by the Trust. To complete development of the software, Sweeden was given access to Cosmo's proprietary data.

¶5 The parties' new business lasted only a few months. By email dated July 28, 2020, to Woody and Sweeden, Barresi summarized the "break-up" of NTH and the plan going forward based on recent conversations among the parties. According to the email, Cosmo was no longer able to fund NTH due to COVID-19, and Sweeden would work to sell some or all of NTH's assets to repay Cosmo the $800,000 it had invested in the project. The email states that NTH "is dissolved effective July 7th, 2020." Woody suggested a change to the summary, which Barresi accepted. It does not appear that Sweeden responded.

¶6 NTH, Cosmo and the Barresi Trust filed this action on August 25, 2020, alleging that Sweeden had breached the terms of the Memorandum of Understanding. The Petition asserted claims for breach of contract, fraud, conversion and unjust enrichment, among others, and sought monetary damages and injunctive relief. The Plaintiffs alleged that Sweeden failed to transfer the assets to NTH that he was required to transfer, failed to meet deadlines for completion of the software, installed "back door access to Ben Barresi's computer without his knowledge or consent," attempted to "hack [or] steal information" from that computer, misappropriated Cosmo's data, wrongfully denied Cosmo employees access to Cosmo's data, failed to account for the expenditure of funds received from NTH and otherwise misused NTH funds for personal and unauthorized expenses. Some aspects of these claims are unique to an individual Plaintiff although other aspects of the claims are shared by one or more of the Plaintiffs. The petition was filed by Kyle Goodwin and William M. Lewis of Goodwin/Lewis PLLC on behalf of NTH, the Barresi Trust and Cosmo.

¶7 The Plaintiffs obtained a temporary restraining order the same day that they filed their petition, prohibiting Merit, Sweeden and the other Sweeden defendants from, among other things, "deleting, erasing or transferring" electronic data belonging to Cosmo or NTH. Although served with notice, Sweeden did not appear at the August 28, 2020 hearing on the preliminary injunction. As a result of that hearing, the temporary restraining order was converted to a preliminary injunction. That injunction also required Sweeden to disclose all passwords, administrative identifications, saved files and backed-up files for accounts owned by Barresi, Cosmo, NTH and other related entities. 

¶8 Sweeden was served with a copy of the Petition the day it was filed and entered an appearance through counsel on September 14, 2020. He filed his Answer on October 2, 2020, in which he asserted various affirmative defenses and alleged that the Plaintiffs had breached the parties' contract. On May 13, 2021, Sweeden sought leave to file "crossclaims, counterclaims and third-party claims." The district court held a hearing on Sweeden's motion on July 6, 2021, and advised Sweeden that he needed to re-urge his request after attaching his amended answer with the proposed crossclaims, counterclaims and third-party claims to the motion.

¶9 On July 7, 2021, Sweeden's counsel sent a letter to counsel for the Plaintiffs demanding that NTH pursue claims against the Trust for violating the terms of the Operating Agreement by failing to contribute the full $2.5 million contemplated by the Memorandum of Understanding. On July 15, 2021, Sweeden filed his motion to disqualify counsel for the Plaintiffs from further participation in this case. He argued that the Goodwin/Lewis law firm had an impermissible and unwaivable conflict of interest precluding its continued representation based on two alleged grounds: (1) Attorney Lewis had previously represented Merit and Sweeden in another matter; and (2) NTH had claims in this lawsuit that are adverse to the Barresi Trust.

¶10 The district court conducted an evidentiary hearing on Sweeden's motion on September 9, 2021. At that hearing, Sweeden referred to Barresi's July 28, 2020 email and argued that the Trust had breached the Memorandum of Understanding by not continuing to fund NTH. He maintained that NTH's purported claim against the Trust created a conflict preventing Plaintiffs' counsel from representing NTH or the Trust. The district court's order denying Sweeden's motion to disqualify was the subject of Sweeden's first appeal. After remand, the district court conducted a hearing on August 10, 2023, to resolve Sweeden's motion to enter findings of fact and conclusions of law consistent with this Court's Opinion in the first appeal. The district court's September 13, 2023 Findings of Fact and Conclusions of Law as to Defendant's Motion to Disqualify Plaintiffs' Counsel is the subject of this appeal.

STANDARD OF REVIEW

¶11 When reviewing an order disqualifying or refusing to disqualify counsel for a party, the trial court's findings of fact are examined for clear error and its application of ethical standards to those facts is reviewed de novo. Bd. of Cnty. Comm'rs v. Assoc. of Cnty. Comm'rs of Oklahoma Self-Insured Grp., 2021 OK 15485 P.3d 234Miami Business Servs., LLC v. Davis, 2013 OK 20299 P.3d 477Arkansas Valley State Bank v. Phillips, 2007 OK 78171 P.3d 899Bd. of Cnty. Comm'rs, 2021 OK 15Jensen v. Poindexter, 2015 OK 49352 P.3d 1201Hayes v. Central State Orthopedic Specialists, Inc., 2002 OK 3051 P.3d 562

ANALYSIS

¶12 Although instructed by the district court to file his proposed crossclaims, counterclaims and third-party claims on June 6, 2021, Sweeden did not do so until October 8, 2021. Consequently, when Sweeden filed his motion to disqualify opposing counsel on July 15, 2021, and when the district court conducted the September 9, 2021 hearing on that motion, the relevant issues in the case were framed by the Plaintiffs' petition and Sweeden's answer.

¶13 Further, in neither his original motion to disqualify counsel nor at the hearing on that motion did Sweeden argue that the substance of the Plaintiffs' breach of contract, fraud and conversion claims against him and Merit created a conflict of interest precluding one counsel chosen by the Plaintiffs from representing all Plaintiffs in the prosecution of those claims. He argued that disqualification was required for two reasons: (1) one of the Plaintiffs' lawyers had previously represented him in a related matter; and (2) NTH had claims against the Barresi Trust not raised in the pleadings but which had to be raised in this action by separate counsel. Sweeden argued that both established a violation of Rule 1.7 of the Oklahoma Rules of Professional Conduct related to conflicts of interest with current clients, 5 O.S.2021 ch. 1, app. 3-a. The Benjamin Barresi Separate Property Trust, et al. v. Merit Petroleum, LLC, et al., No. 119,911 (COCA Div. IV Jun. 14, 2023) (unpublished).

¶14 When this case was remanded after his first appeal, Sweeden did not seek to amend his motion to disqualify or request a new evidentiary hearing to address the purported conflicts raised by his subsequently filed amended answer, crossclaims, counterclaims and third-party claims. Sweeden did file a Request for Findings of Fact and Conclusions of Law. The Plaintiffs responded by filing their proposed findings and conclusions. In his August 21, 2023 Reply, filed after the August 10, 2023 hearing on his motion to enter findings and conclusions, Sweeden submitted his own proposed findings and conclusions and argued that the Plaintiffs were improperly attempting to raise new issues. He contended that the case had "been remanded to state the original basis for this Court's decision, not some new, belated argument." (Record at 331). On this point, Sweeden is correct.

¶15 No transcript of the August 10, 2023 hearing, if one was made, is included in the appellate record. The district court filed its Findings of Fact and Conclusions of Law on September 13, 2023, noting that it was deciding Sweeden's "Motion to Disqualify Plaintiffs' Counsel filed on July 15, 2021" which "came before this Court for evidentiary hearing [on September 9, 2021]."

¶16 Sweeden's December 17, 2021 amended answer and counterclaim asserted, for the first time, a "Derivative Action" on behalf of NTH against Cosmo and the Trust pursuant to 12 O.S.2021 § 2023.1Gaines v. Sun Refinery and Mktg., 1990 OK 33790 P.2d 1073

¶17 Consequently, we will review the September 13, 2023 order denying Sweeden's July 15, 2021 motion to disqualify on the basis of the pleadings and arguments raised by Sweeden when that motion was decided. At that point, the interests of the Plaintiffs were not adverse. They had sued Sweeden for his alleged breach of the Memorandum of Understanding as well as for his conversion of their property. And Sweeden's non-derivative claims did not create any conflict among the Plaintiffs precluding one law firm from representing all of them.

I. Conflict Based on Prior Representation

¶18 Sweeden first argued to the district court that a disqualifying conflict exists because William Lewis, a member of the law firm representing the Plaintiffs, had represented him in a previous unrelated matter. He attached to his motion to disqualify a redacted copy of an email purporting to show that representation. The Plaintiffs provided the district court with an unredacted copy of that email. What the full text of the email shows is that Sweeden, Woody and another business partner were dissolving their partnership. Mr. Lewis had drafted the dissolution document for his client, the third partner. The email reflects that Mr. Lewis received only a request from Sweeden to incorporate a change to the draft which Mr. Lewis had tried to accommodate. After considering the evidence presented on this issue, the district court found that Sweeden had not retained Mr. Lewis, executed an engagement letter with him, or received or paid any portion of a bill from Mr. Lewis for that work. The district court concluded that there was no evidence that Mr. Lewis had previously represented Sweeden in that or any other matter.

¶19 At the hearing on his motion to disqualify, Sweeden did not present any additional evidence or argument on this issue and did not address the matters in his presentation to the court. However, Sweeden denied that he had abandoned this issue. He stated: "I'll rely on the briefing for that." Sweeden's appellate briefing on this issue contributes nothing further. He merely quotes the email purportedly showing the prior representation but addresses none of the district court's other findings of fact or conclusions of law supporting its determination that no prior representation existed. We generally do not review "issues that receive only superficial treatment in an appellate brief or [ ], assignments of error that lack a reasoned argument or supporting authority." Cox Oklahoma Telecom, L.L.C. v. State of Oklahoma ex rel. Oklahoma Corp. Comm'n, 2007 OK 55164 P.3d 150

¶20 Further, the facts on this issue are not in dispute: Mr. Lewis was employed by the third partner of the prior partnership to draft the dissolution agreement, there is no engagement letter or any other document by which Sweeden purported to employ Mr. Lewis as his attorney, there is no evidence that Mr. Lewis sent a bill to, or that Sweeden paid for, any of the legal services Mr. Lewis rendered for his work on dissolving the prior partnership. The email does not show that Mr. Lewis advised Sweeden on what changes to make to the dissolution document, but shows only that Mr. Lewis attempted to incorporate Sweeden's requested change into the dissolution document Mr. Lewis was drafting. Consequently, the district court did not err in finding that Mr. Lewis had not previously represented Sweeden. Cf., State ex rel. Oklahoma Bar Ass'n v. Gassaway, 2008 OK 60196 P.3d 495

¶21 A party seeking to disqualify an attorney pursuant to Rule 1.7 of the Oklahoma Rules of Professional Conduct must, at the outset, show that the attorney being challenged represented more than one client. 

II. Conflict based on NTH's Claim against the Trust

¶22 In his second alleged Rule 1.7 violation, Sweeden argued that NTH had a breach of contract claim against the Trust because the Trust provided only $800,000 of the $2,500,000 in funding contemplated by the Memorandum of Understanding. On the basis of this alleged claim, Sweeden argued that counsel chosen by NTH and the Trust could not represent any of the Plaintiffs because counsel would be required to bring that claim on behalf of one client, NTH, against another client, the Trust.

¶23 First, Sweeden did not argue that a conflict of interest precluded counsel from representing the third Plaintiff, Cosmo, in its claim that Sweeden converted Cosmo's property and wrongfully prevented Cosmo employees from access to the Company's computer files. Sweeden focused solely on the joint representation of NTH and the Trust with respect to the Trust's obligations pursuant to the Memorandum of Understanding. Regarding this argument, Sweeden has satisfied the two-client requirement of Rule 1.7. NTH is represented by the same law firm that represents the Trust in this litigation.

¶24 Second, however, to show a concurrent conflict of interest which violates Rule 1.7, Sweeden must do more than show joint representation of more than one client. He must show that: "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client." 5 O.S.2021 ch. 1, app. 3-a, Rule 1.7(a). With respect to NTH's claims against Sweeden, those claims are not "directly adverse" to the Trust. In fact, NTH and the Trust share a joint interest in some of those claims, e.g., misappropriation of NTH funds, and an independent, non-adversarial interest in the others, e.g., conversion of the Trust's and Cosmo's property. Further, at least until the Plaintiffs seek to collect any judgment against Sweeden, counsel's responsibilities to each Plaintiff will not be materially limited by their responsibilities to the other Plaintiffs. That theoretical possibility at this stage of the litigation is insufficient to create a conflict prohibited by Rule 1.7(a)(2).

¶25 But Sweeden's motion does not concern the claims as framed by the pleadings. He is demanding something more. He is demanding that Plaintiffs' counsel file a new claim in this litigation whereby NTH would sue the Trust for breach of the funding obligations in the Memorandum of Understanding, and thereby create a Rule 1.7 concurrent conflict. However, any such claim belongs to NTH, not Sweeden, Merit or any of the other defendants affiliated with Sweeden. "The remedial rights of minority stockholders with respect to wrongs committed against the corporation . . . are derivative rights and any action taken by the stockholders to redress such wrongs must be for the benefit of the corporation." Weston v. Acme Tool, Inc., 1968 OK 7441 P.2d 959Dobry v. Yukon Elec. Co., 1955 OK 281290 P.2d 135

¶26 Further, Oklahoma law provides a procedure by which a minority owner in a limited liability company can pursue such claims.

A member may bring an action in the right of the limited liability company to recover a judgment in its favor if . . . (2) The plaintiff has made demand on [the] managers . . . requesting that such managers . . . cause the limited liability company to sue in its own right; and (3) The . . . managers with such authority have wrongfully refused in the exercise of their business judgment to bring the action . . . .

18 O.S.2021 § 205118 O.S.2021 § 205212 O.S.2021 § 2023.1

¶27 Sweeden argues that he satisfied the demand requirement with his July 7, 2021 letter. Haddan et al. v. The Coves Master Association, Inc. et al.:

[T]he purpose of the demand requirement is to ensure that the corporate board's management decisions are respected, [and] a critical inquiry in any shareholder's derivative suit is whether the board, upon receiving a shareholder's demand, conducted an investigation in good faith and made a determination that initiating litigation was not in the corporation's best interest.

2025 OK CIV APP 12570 P.3d 602Ironworkers Dist. Council of Philadelphia & Vicinity Ret. & Pension Plan v. Andreotti, 2015 WL 2270673, *31 (Del. Ch. May 8, 2015), aff'd, 132 A.3d 748 (Del. 2016). 

¶28 Further, when "a stockholder makes a demand on the board to consider or bring legal action, the stockholder has necessarily conceded that, at least at this stage of the pleadings, he cannot allege facts showing that the board is disqualified from the decision by self-interest or lack of independence." Id. at *25. Consequently, Sweeden was required to show that the managers of NTH "wrongfully refused in the exercise of their business judgment" to sue the Trust. 18 O.S.2021 § 2051

¶29 More importantly, Sweeden cannot bring a derivative action as a counterclaim in the Plaintiffs' case. "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party . . . ." 12 O.S.2021 § 2013Dobry v. Yukon Elec. Co., 1955 OK 281290 P.2d 135Kaplan v. Peat, Marwick, Mitchell & Co., 540 A.2d 726, 730 (Del. 1988) (quoting Aronson v. Lewis, 473 A.2d 805, 811 (Del. 1984)) (overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000)). Sweeden's derivative argument would have NTH asserting a counterclaim against itself, not against an opposing party in this action.

¶30 Because a counterclaim may only be brought against an "opposing party," Sweeden's derivative action is proper only if brought as a separate action. Until that action is filed and counsel enter their appearances for the respective parties, the determination of any conflict of interest prohibited by Rule 1.7 is premature. The cases Sweeden cites in his appellate briefing regarding the potential conflict of interest between a company and its management in derivative litigation address this issue. They do not resolve the conflict-of-interest issue raised by Sweeden in this litigation. Consequently, the district court did not err in denying Sweeden's motion to disqualify on the basis of a purported violation of Rule 1.7.

III. Timeliness of Sweeden's Motion

¶31 As the district court stated in its findings of fact, Sweeden waited "approximately one year" to file his motion to disqualify Plaintiffs' counsel, even though Sweeden knew the basis for his disqualification argument as early as July, 28, 2020. One month before this case was filed, Sweeden received the memo from Barresi regarding the decision to stop future funding of NTH. He knew that fact when the preliminary injunction was entered against him, and he knew that fact when he filed his answer asserting as an affirmative defense that the Plaintiffs had breached the Memorandum of Understanding. But Sweeden did not raise the disqualification issue at those points in this litigation. He waited. See State ex rel. Howard v. Oklahoma Corp. Comm'n, 1980 OK 96614 P.2d 45

¶32 Nonetheless, "delay alone would not necessarily prejudice the non-moving party." Hayes v. Central State Orthopedic Specialists, Inc., 2002 OK 30Kevlik v. Goldstein, 724 F.2d 844 (1st Cir. 1984)). But in this case, the delay did prejudice the Plaintiffs. When Sweeden filed his motion to disqualify this case was not dormant. It had been actively litigated for twelve months. And the litigation continued for two more years prior to Sweeden's second appeal of the order denying his motion to disqualify Plaintiffs' counsel. The delay between the first and second appeals resulted, in part, from Sweeden's failure to ask the district court to enter findings of fact and conclusions of law at the evidentiary hearing on his motion to disqualify. In Hayes v. Central State Orthopedic Specialists, Inc., a "delay of eight months while much was happening in the case, waived any right [the party] might have had to insist on the harsh remedy of disqualifying [opposing counsel]." 2002 OK 30

¶33 Further, during this time, Sweeden did not ask the district court to stay the litigation pending either of his appeals of the disqualification issue, thereby avoiding or minimizing the prejudice to the Plaintiffs if he were successful. Even where a party has established a violation of the Rules of Professional Conduct requiring disqualification of opposing counsel, which Sweeden has not, the court will balance the hardship on the respective parties to determine whether denying disqualification would "'threaten the integrity of the judicial process.'" Id. (quoting In re Towne, 2000 OK 303 P.3d 154

¶34 We note that Sweeden, in his appellate briefing, argues that the Plaintiffs should not be permitted to assert their waiver argument for the first time on appeal because they did not raise that issue in the district court. See, e.g., Panama Processes, S.A. v. Cities Serv. Co., 1990 OK 66796 P.2d 276Lafalier v. Lead-Impacted Communities Relocation Assistance Tr., 2010 OK 48237 P.3d 181Dixon v. Bhuiyan, 2000 OK 5610 P.3d 888Farley v. City of Claremore, 2020 OK 30465 P.3d 1213

CONCLUSION

¶35 Sweeden moved to disqualify Plaintiffs' counsel in this litigation based on a concurrent conflict of interest prohibited by Rule 1.7 of the Oklahoma Rules of Professional Conduct, 5 O.S.2021 ch. 1, app. 3-a. He argued that disqualification was required for two reasons: (1) one of the Plaintiffs' lawyers had previously represented him in a related matter; and (2) NTH had claims against the Barresi Trust not raised in the pleadings but which had to be raised in this action by separate counsel.

¶36 With respect to the first, the district court found that Sweeden was not represented in a previous matter by one of the Plaintiffs' attorneys, and Sweeden's superficial treatment of this issue on appeal does not show that the district court erred. Regarding the second, Sweeden has failed to show that a prohibited conflict of interest exists preventing counsel chosen by the Plaintiffs from representing all Plaintiffs.

¶37 The district court's denial of Sweeden's motion to disqualify Plaintiffs' counsel is affirmed.

¶38 AFFIRMED.

WISEMAN, P.J., and BLACKWELL, J., concur.

FOOTNOTES

See The Benjamin Barresi Separate Property Trust, et al. v. Merit Petroleum, LLC, et al., No. 119,911 (COCA Div. IV Jun. 14, 2023) (unpublished).

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

State ex rel. Oklahoma Bar Ass'n v. Helton, 2017 OK 31394 P.3d 227See 12 O.S.2021 § 2502State ex rel. Oklahoma Bar Ass'n v. Bailey, 2023 OK 34530 P.3d 24

See Lifetouch Nat'l Sch. Studios v. Oklahoma Sch. Pictures, 2024 OK CIV APP 17554 P.3d 76418 O.S.2021 § 2060See 12 O.S.2021 § 2023.1infra note 7.

Johnson v. Brown, 2024 OK CIV APP 18554 P.3d 781

Hamid v. Sew Original, 1982 OK 46645 P.2d 496 Nonetheless, it does appear that at some point the matter was raised, or the district court would not have addressed Sweeden's one-year delay in filing his motion to disqualify.